**Arnie KING, Plaintiff, Appellee,**

**v.**

**Joseph HIGGINS, Defendant, Appellee,**

**Douglas Vinzant, Defendant, Appellant.**

**No. 82–1580.**

United States Court of Appeals,
First Circuit.

Argued Jan. 4, 1983.

Decided March 9, 1983.

Order on Denial of Rehearing and Rehearing En Banc April 27, 1983.

William D. Luzier, Jr., Asst. Atty. Gen., Criminal Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Div., Boston, Mass., were on brief, for Douglas Vinzant.

Edward Berkin, Boston, Mass., with whom Doyle, Playter, Novick & Berkin, Boston, Mass., was on brief, for Arnie King.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and PETTINE,* Senior District Judge.

COFFIN, Chief Judge.

This is an appeal from an award of $390 in compensatory damages to plaintiff-appellee Arnold King for deprivation of his due process rights at a prison disciplinary hearing. At the time of the proceedings, on July 2, 1973, plaintiff was an inmate at the farm section of M.C.I., Concord. Defendant Douglas Vinzant was the Superintendent at that prison. His co-defendant in the proceedings below was Joseph Higgins, Acting Commissioner of Corrections.

Following an incident at his place of work, plaintiff was brought before a disciplinary board and charged with refusing to work, refusing a direct order and inciting to riot. He was not afforded prior notice of the hearing, nor advised of his right to seek the advice of counsel, to confront the complaining officer and to present witnesses on his own behalf. He was found guilty of all offenses and sentenced to 15 days isolation. He appealed to defendant Vinzant, characterizing the disciplinary proceeding as a "Kangaroo Court". Defendant Vinzant denied the appeal.

After the disciplinary hearing, prison officials held a reclassification hearing. The reclassification board recommended that because of his frequent disciplinary infractions, plaintiff be transferred to a more secure institution, M.C.I., Walpole.

Plaintiff brought suit under 42 U.S.C. § 1983, alleging deprivation of his right to due process of law and effective assistance of counsel.[1] After a hearing by a magistrate, the district court, in *King v. Higgins,* 370 F.Supp. 1023 (D.Mass.1974), ruled that the procedures employed at his disciplinary hearing deprived plaintiff of due process of law and that that deprivation also tainted his reclassification hearing. The court ordered that the findings of the disciplinary and reclassification boards be expunged from his record and new hearings be held, and referred to a magistrate plaintiff's claims for compensatory and punitive damages against defendants Vinzant and Higgins. We affirmed the invalidation of the disciplinary and reclassification hearings, but found the issue of damages not yet appealable. *King v. Higgins,* 495 F.2d 815 (1st Cir.1974). In a de novo hearing on March 8, 1974, plaintiff was found not guilty of inciting to riot and guilty of the other two offenses. He was removed from the farm at Concord, but no isolation time was imposed.

On May 17, 1978, the Magistrate recommended that plaintiff be awarded $390 in damages against defendant Vinzant resulting from the lack of protections afforded plaintiff at his disciplinary hearing—$375 for pain and suffering during 15 days in isolation and $15 for loss of wages. The Magistrate recommended no damages against defendant Higgins, because plaintiff had produced insufficient evidence that Higgins knew or should have known that departmental procedure was not being fol-

---

* Of the District of Rhode Island, sitting by designation.

1. Plaintiff claimed that defendant Vinzant had prevented counsel from speaking with plaintiff for a number of days when he was confined in isolation. The district court noted that the magistrate had made no findings regarding that claim and, in view of its order invalidating the proceedings on other grounds, found it unnecessary to do so itself. The court found it sufficient to note that prisoners retain their constitutional right to effective assistance of counsel and the corollary right to free and private communication with counsel. Plaintiff's ineffective assistance of counsel claim is not at issue before us.

lowed. He found neither defendant liable for damages flowing from the reclassification hearing, since the law regarding a prisoner's rights at such a hearing was unclear at the time of the incident.

On September 20, 1978, the district court remanded the report to the Magistrate, in light of *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for findings of fact on which his recommended award was based. No action was taken until March 12, 1982, when a second magistrate concluded that there was a factual basis for the imposition of the $390 damage award. The district court approved the Magistrate's findings and ordered that judgment be entered in favor of plaintiff. From that opinion, defendant Vinzant appeals.

Good Faith Immunity

■ Defendant urges that he should be immune from damages under 42 U.S.C. § 1983 both because the state of the law regarding a prisoner's rights at a disciplinary hearing was unclear at the time of plaintiff's appeal and because he neither knew nor should have known that his conduct violated those rights. We agree with defendant that he is entitled to a qualified immunity from damages under Section 1983. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Thus, he is liable for damages only if he knew or should have known that his action would violate plaintiff's constitutional rights. *Id.* at 562, 98 S.Ct. at 860; *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). We disagree, however, with defendant's contention that he should not reasonably have known that plaintiff was entitled to certain minimum procedural safeguards at his disciplinary hearing or that plaintiff had not received those safeguards.

■ It has long been settled that "whenever substantial individual interests of prisoners are at stake, 'some assurances of elemental fairness are essential.'" *Palmigiano v. Baxter,* 487 F.2d 1280, 1283 (1st Cir.1973) (quoting *Nolan v. Scafati,* 430 F.2d 548, 550 (1st Cir.1970)). As defendant points out, at the time of plaintiff's disciplinary hearing the precise bounds of those required assurances were not clear. In *Palmigiano, supra,* decided after plaintiff's hearing and appeal, we set out certain due process standards for a hearing that may result in a marked change in a prisoner's status. Then, in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that due process required that a prisoner be given advance written notice of the claimed violation and a written statement of the fact-findings as to the evidence relied upon and the reasons for the disciplinary action taken. Because the hearing in this case antedated both *Wolff* and *Palmigiano,* defendant urges that he should not be held responsible for having deprived plaintiff of those rights. We disagree.

In its opinion invalidating plaintiff's hearing, the district court noted the requirements newly enunciated in *Palmigiano,* but determined that it need not rely on them because "measured against even the most basic standards of due process and fundamental fairness, the disciplinary procedure afforded plaintiff fails to pass constitutional muster." *King v. Higgins, supra,* 370 F.Supp. at 1028. Plaintiff risked and was punished by a substantial deprivation of liberty. As the district court recognized, it had long been clear that at a hearing which could result in such punishment plaintiff was entitled at least to notice and the opportunity to present evidence in his own behalf. *Id.* (citing *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970)).[2] We agree with the district court that those safeguards should be considered part of the "assurances of elemental fairness" to which a prisoner is entitled and that needed no specific judicial articulation.

Our decision is bolstered by the presence of departmental regulations guaranteeing the rights of which plaintiff was deprived. The district court held that defendant's failure to adhere to those guidelines itself constituted a violation of due process. In light of recent Supreme Court guidance, *see United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), we have now retreated from our earlier position that a failure to adhere to administrative regulations promulgated to protect constitutional rights is itself a violation of due process, *see United States v. Irvine,* 699 F.2d 43 (1st Cir.1983), although we note that the presence of those regulations may signal a state created liberty interest entitled to federal

---

**2.** The district court also listed as fundamental the right to confront adverse witnesses. 370 F.Supp. at 1028. The Supreme Court, however, would leave the availability of that right to the sound discretion of the officials of state prisons. *Wolff v. McDonnell, supra,* 418 U.S. at 569, 94 S.Ct. at 2981.

due process protection, *see Hewitt v. Helms,* —— U.S. ——, ——, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Even if, standing alone, a violation of the regulations does not provide a basis for a due process claim, however, the presence of those regulations certainly rebuts defendant's "good faith" defense. Even if he did not know that the Constitution required that plaintiff be given advance notice and an opportunity to present evidence, he knew or should have known that his own departmental regulations required those protections. Defendant should not be able to escape liability for a constitutional violation simply because he thought the rights being denied were protected only by his own departmental regulations (which have the effect of state law). *See Niles v. Boston Rent Control Administrator,* 6 Mass.App. 135, 150, 374 N.E.2d 296 (1978) ("Rules which have been promulgated pursuant to a legislative grant of power have the force of law and are binding on the agency which issued them.").

We are similarly unpersuaded by defendant's argument that he neither knew nor should have known that plaintiff had been denied his constitutional rights. Defendant apparently does not dispute the fact that as the official designated to hear prisoners' appeals, he should be liable in damages for his inaction in curing deficiencies in the disciplinary proceedings of which he was aware. *See Rizzo v. Goode,* 423 U.S. 362, 370, 371, 376, 96 S.Ct. 598, 603, 604, 606, 46 L.Ed.2d 561 (1976) (for liability under Section 1983, there must be a sufficient link between the constitutional violations and any action or inaction on the defendant's part). He suggests, instead, that based on the information before him, a general complaint from plaintiff that the proceeding was a "Kangaroo Court" and reports of the disciplinary board members that indicated no deprivation of constitutional rights, he had no reason to know that plaintiff's rights had been violated.

Defendant confuses a lack of knowledge of the failure of other officials to ensure plaintiff's constitutional rights with a lack of duty on his part to assure that the proceedings below were constitutionally sound. As the official designated to hear prisoners' appeals, he had a duty to conduct at least a minimal investigation to determine whether there was any merit to plaintiff's appeal. *See Dimarzo v. Cahill,* 575 F.2d 15, 17–18 and n. 3 (1st Cir.1978) ("[f]ailure to act where there is a duty to act can give rise to an actionable claim under section 1983"). Defendant insists that he fulfilled that duty by asking for reports from the members of the disciplinary board. Those reports, however, were sufficient at least to put him on notice of the constitutional violations.[3] Whether or not, based on the appeal and the reports of the disciplinary board members, defendant knew or should have known that plaintiff had been deprived of his rights, he knew or should have known enough to have investigated further. The reports of the board members were conspicuous in their silence regarding plaintiff's prior notice of the proceeding and his opportunity to confront the complaining officer and present witnesses on his own behalf. In addition, one of the reports indicated that the board's decision was based in part on a private conversation with the complaining officer. We agree with the Magistrate that in light of the information before him, defendant's failure to investigate further to determine whether plaintiff had received his constitutional rights constituted reckless disregard of plaintiff's rights and leaves him unable to assert a good faith defense to his liability for damages under 42 U.S.C. § 1983.

### Proof of Actual Injury

Defendant argues that compensatory damages should be denied because there was no proof that plaintiff was actually injured by the due process violations. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). He insists that since plaintiff was found guilty at a de novo hearing of two of the three offenses of which he was convicted at the first hearing, the failure to afford procedural due process cannot properly be viewed as the cause of the sanctions, specifically the sanction of isolation, imposed at the first hearing.

---

**3.** Defendant is thus distinguishable from the warden in *Hayes v. Thompson,* 637 F.2d 483 (7th Cir.1980), who, despite his supervisory responsibilities, was found not to be responsible for the procedures employed by the Institutional Adjustment Committee. The warden had issued regulations regarding the conduct of the disciplinary proceedings, but he had no specific responsibility to review the findings and procedures of the Committee. The court declined to reject as "clearly erroneous" the district court's conclusion that the warden had fulfilled his supervisory responsibilities.

Defendant's argument is without merit. On the basis of plaintiff's first, improper disciplinary hearing, he was found guilty of refusing to obey a direct order, refusing to work and inciting to riot. He was sentenced to and served 15 days in solitary confinement. In the de novo hearing ordered by the district court, plaintiff was convicted only of the first two offenses but was found not guilty of the most serious offense (inciting to riot) and given no time in isolation. His 15 days in isolation can therefore reasonably be attributed to the deprivation of due process at his first hearing and damages based on his pain and suffering and loss of wages during those 15 days are proper.

*The judgment of the district court is affirmed.*

### ORDER

Defendant suggests that our analysis failed to follow the guidance of the Supreme Court in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), that the availability of a "good faith" immunity defense be determined by an objective standard—whether the law was so clearly established at the time the violation occurred that an official knew or reasonably should have known that the action he took would violate the constitutional rights of the plaintiff. As we noted in the opinion, the federal right which plaintiff was denied was clearly established at the time of the violation. The presence of departmental regulations setting out the requirements which we found to be constitutionally required simply reinforced our judgment that defendant could claim no extraordinary circumstances depriving him of knowledge of the relevant legal standard. *See id.* at ——, 102 S.Ct. at 2738–39; *see also id.* at ——, 102 S.Ct. at 2740 ("The standard adopted by the Court would not allow the official who actually knows that he was violating the law to escape liability for his actions, even if he could not 'reasonably have been expected' to know what he actually did know.") (Brennan, Marshall and Blackmun, JJ., concurring in the opinion of the Court).